THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| ACORN MEDIA GROUP, INC.  )<br>8515 Georgia Ave., Ste 650  )<br>Silver Spring, Maryland 20910  )<br>Montgomery County  )<br>              Plaintiff,  )<br>                      )<br>v.  )<br>                      )<br>LAWRENCE MAGEN and  )<br>ACORN TV LLC  )<br>244 Fifth Avenue, Suite 2557  )<br>New York, NY, 10001-7604  )<br>                      )<br>              Defendants.  )<br>_____)  | COMPLAINT FOR TRADEMARK<br>INFRINGEMENT AND UNFAIR<br>COMPETITION<br><br><br><br><br><br>JURY DEMANDED |

Plaintiff, ACORN MEDIA GROUP, INC., (hereinafter "Plaintiff" or "ACORN MEDIA"), by and through its attorney, files this Complaint for Trademark Infringement, and Unfair or Deceptive Trademark Practices against Defendants, LAWRENCE MAGEN and ACORN TV LLC (hereinafter collectively referred to as "Defendants" or individually by name), and alleges as follows:

**PARTIES**

1. Plaintiff, Acorn Media Group, Inc. is a corporation organized and existing under the laws of the District of Columbia with a principal place of business located at 8515 Georgia

1

Ave., Suite 650, Silver Spring, Maryland 20910 and doing business throughout the United States and internationally.

2. Upon information and belief, Defendant, Acorn TV LLC, is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 244 Fifth Avenue, Suite 2557, New York, NY, 10001-7604. Upon information and belief, Acorn TV LLC is doing business in the state of Maryland.

3. Upon information and belief, Defendant Lawrence Magen is domiciled in Minnesota and is listed as the Registrant of the <acorn.tv> domain name. Upon information and belief, Defendant Magen is the organizer and sole member of Acorn TV LLC.

## JURISDITION AND VENUE

4. This is a complaint for Trademark Infringement and Unfair Competition, with jurisdiction arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) Trademark Infringement and 1125 (a) Unfair Competition.

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 (a). Upon information and belief, Defendant is doing business within the State of Maryland and this action arises under the Trademark Laws of the United States.

6. This Court has personal jurisdiction over the Defendant inasmuch as Defendant has solicited and conducted business within the State of Maryland via its Acorn TV webpage.

7. Upon information and belief, venue is proper in this district under 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

8. Acorn Media Group, Inc. has established a worldwide following and consumer demand for its goods and services. The demand for Plaintiff's goods and services has been established through hard work, extensive advertising, significant investment and brand development. As a result, Plaintiff has established and owns valuable intellectual property rights in its trademarks.

9. To identify to its customers Plaintiff's distinctive goods, Plaintiff created and has established long-term use of the mark ACORN for prerecorded video programming, streaming video and other various goods, including watches.

10. Plaintiff has been using the ACORN mark in commerce since at least as early as 1998. Plaintiff has invested in, developed and marketed its goods and services under the ACORN mark over at least a 13 year period of time. During this time, Plaintiff has developed the ACORN mark into a distinct identifier for Plaintiff's goods and services. As a result, Plaintiff has acquired common law rights in the ACORN mark.

11. Plaintiff has used the ACORN mark in association with watches since at least as early as 2001.

12. Plaintiff has used the ACORN mark in association with online media since at least as early as 2002.

13. Plaintiff has invested substantially and continually in marketing and advertising of its ACORN marks. In 2001 marketing efforts were in excess of $1 million. In 2010, marketing and advertising expenses associated with the ACORN mark grew to exceed

$7.5 million and represent an investment of more than $68 million over the 2001 to 2011 period.

14. In 2001, over one million catalogs were distributed using the ACORN mark in association with video programming and related gifts, such as watches.  That number has increased to over 14 million catalogs distributed in 2010 using the ACORN mark.  From 2001 to 2011, more than 120 million catalogs featuring the ACORN mark have been delivered to the consuming public, each one developing the association between the ACORN mark and the Plaintiff's goods and services, including video programming and related gifts, such as watches.

15. The numbers of video sales, made by Plaintiff in association with the ACORN mark, are a strong indicator of the secondary meaning Plaintiff has attained with the ACORN mark. Plaintiff has sold over $70 million of video programming since 2001 in association with the ACORN trademark.  At least $30 million of this total represents videos that are licensed to Acorn Media and contain the ACRON trademark on the packaging.  The remaining sales include third party videos that were marketed through the Acorn Catalog and websites, also in association with the ACORN trademark.

16. Plaintiff has sold over $2.9 million of watches in association with the ACORN trademark.

17. To further identify to its customers Plaintiff's distinctive goods, Plaintiff created and began using expansions of the ACORN mark.  On July 7, 2003, Plaintiff applied with the United States Patent and Trademark Office (the "PTO") to register its mark, ACORN

4

EXCEPTIONAL ENTERTAINMENT IMAGINATIVE GIFTS UNCOMMON QUALITY, as a design plus word mark.  The mark was registered for mail order catalog services featuring high quality entertainment software.  On January 11, 2003, the PTO approved the application and issued a Certificate of Registration No. 2917252 (Exhibit 1 attached hereto).

18. Plaintiff created, used and, on February 12, 2002, applied to register the ACORNMEDIA design plus word mark with the PTO for prerecorded DVDs featuring documentary, drama, mystery, comedy, children's, action-adventure, music and entertainment, science fiction, special interest, and health and wellness films and television programs.  On March 11, 2003, the PTO approved the application and issued a Certificate of Registration No. 2695190 (Exhibit 2 attached hereto).

19. The predominant portion of both of Plaintiff's federally registered marks is the ACORN wording.

20. Plaintiff has also used and developed the ACORN mark in association with multiple ACORN-related websites and has been selling video recordings and related goods, including gifts and watches, under the ACORN trademark on its websites www.acornmedia.com and www.acornonline.com since at least 2001.  These domains are further evidence of the Plaintiff's investment and development of the ACORN mark with the public. The consuming public has responded to Plaintiff's marketing efforts involving the ACORN name, as evidenced by over 6.5 million page views in 2010 and over 4.1 page view through July 2011.

21. On information and belief, Defendants have appropriated Plaintiff's mark as their business name, for example, filing Acorn TV LLC as a limited liability company in the State of Delaware on February 28, 2007.

22. Upon information and belief, Defendants have caused a website to exist at <acorn.tv> where Defendants hold themselves out as Acorn TV, a distributor of streamed video segments. Further using this domain name, Defendant directs consumers to another site where Defendant markets and offers watches for purchase at the "Acorn Exchange."

23. On information and belief, Defendants did not place active content on the <acorn.tv> domain until at least 2010. On information and belief, 2010 is the first use by Defendants of the domain name in association with Plaintiff's ACORN mark for the same goods and services, clearly establishing Plaintiff as the senior user of the ACORN marks.

24. Upon information and belief, Plaintiff's common law rights and registrations for the ACORN marks predate Defendants usage of "acorn" for similar goods and services.

25. Upon information and belief, Defendants, on the <acorn.tv> site use Plaintiff's ACORN mark to market its goods and services, including streamed video and watches.

26. Upon information and belief, Defendants plan to extend its goods and services offerings under "Acorn TV" and the "Acorn Exchange" to include distinctive jewelry at different price points, further expanding Defendants' use of Plaintiff's ACORN mark on competing goods.

27. Upon information and belief, Defendants continue to make use of the <acorn.tv> site for streaming video and watches in conjunction with the "acorn" mark.

6

## **COUNT 1 – TRADEMARK INFRINGEMENT (Lanham Act § 32)**

28. Paragraphs 1 through 27 are incorporated herein by reference.

29. Defendants' wrongful use of the ACORN brand name marks is an infringement of Plaintiff's registered and common law trademarks and is likely to cause confusion, mistake and deception of the public as to the identity and origin of Defendant's goods and services.

30. Acorn Media's federal registrations on the Principal Register for its ACORN marks provide conclusive evidence of Plaintiff's exclusive right to use these marks of Acorn's ownership of the marks and exclusive right to use the marks in commerce in association with Acorn's goods and services.

31. Acorn Media's long-standing use and establishment of common law rights in its ACORN mark in association with prerecorded video programming, online video and various goods, including watches, provides it exclusive right to the ACORN mark in commerce in relation to these goods.

32. Defendants' misappropriation and wrongful use of the ACORN mark for its company name, as its domain name, on its web site and in promotion of its goods and services is likely to cause confusion as to sponsorship or authorization by Plaintiff, or alternatively destroy the origin-identifying function of the ACORN marks.

33. Defendants' uses of the ACORN marks include "acorn tv" and "acorn exchange" for competing goods. Defendants' uses, therefore, fully incorporate identically the ACORN mark. Adding "tv" does not distinguish Defendants' use from Plaintiffs mark and "tv"

7

only serves to describe a portion of the goods on which the mark is used by both Plaintiff and Defendants. Plaintiff's federally registered marks contain ACORN as the dominant part of the mark, making Defendants' use confusingly similar to all of Plaintiff's marks in sight, sound and connotation.

34. Due to the foregoing, Plaintiffs have been irreparably harmed and Defendants are liable to Plaintiff for Trademark Infringement under 15 U.S.C. § 1114.

## **COUNT 1I – FALSE DESIGNATION OF ORIGIN (Lanham Act § 43(a))**

35. Paragraphs 1 through 34 are incorporated herein by reference.

36. Plaintiff's ACORN marks, as used by Plaintiff are distinctive and have become associated with Plaintiff and therefore exclusively identify Plaintiff's business, products and services.

37. Defendant's use of the ACORN brand marks to promote, market and/or offer for sale its good and services, such as, watches and/or streaming media, is in direct competition with Plaintiff's products and services. Such use by Defendants is likely to cause confusion, mistake or deception as to affiliation, connection, origin or sponsorship, and is prohibited under 15 U.S.C. § 1125(a).

38. Due to Defendant's wrongful use and appropriation of the ACORN brand marks, consumers are deceptively led to believe that Defendant's goods and services originate with or are sponsored or approved by Plaintiff, causing confusion among the purchasing public.

39. By virtue of the foregoing, Plaintiff has been and continues to be irreparable injured.

### **COUNT III - DILUTION OF FAMOUS MARKS (Lanham Act § 43(c) )**

40. Paragraphs 1 through 39 are incorporated herein by reference.

41. The ACORN family of marks are famous trademarks within the meaning of the 15 U.S.C. § 1125 (c).

42. Defendant's use of the mark is a third party use which dilutes the distinctive quality of the mark.

43. Plaintiff has established a long-standing use of the ACORN marks in association with the goods and services on which the marks are being used.

44. The ACORN marks have acquired significant distinctiveness and two of the marks are federally registered.

45. Plaintiff has invested in and engaged in extensive advertising and publicity of the marks through variable channels of trade, such as through, online, catalog, direct and wholesale markets for video and associated gifts.

46. Through its advertising and marketing efforts, Plaintiff has established a worldwide geographical trading area in which the ACORN marks are used.

47. Plaintiff has no control over the quality of the goods and services, advertising or marketing, web site, or other use of the ACORN mark and its misappropriation by Defendant. Therefore, the distinctive qualities of the ACORN marks are being and will continue to be diluted by Defendant's use in violation of 15 U.S.C. § 1125 (c).

9

48. The ACORN marks are exceptionally valuable and Plaintiff is suffering and will continue to suffer irreparable harm and blurring of the ACORN marks if Defendant's conduct is allowed to continue.

49. Alternatively, Defendant's use of Plaintiff's marks in association with its streaming video and goods may misrepresent Plaintiff and its marks and result in tarnishment of the ACORN marks.

### COUNT IV - CYBERPIRACY (Lanham Act § 43(d) )

50. Paragraphs 1 through 49 are incorporated herein by reference.

51. On information and belief, Defendants have, without regard to the goods or services of Plaintiff, demonstrated a bad faith intent to profit from Plaintiff's ACORN marks and has registered and used the <acorn.tv> domain that is identical or confusingly similar to the ACORN marks.

52. Defendants were made aware of Plaintiff's common law and federally registered rights in the ACORN marks and yet continue to offer competing goods on the <acorn.tv> domain, which itself violates Plaintiff's rights in its trademarks and creates confusion as to the source of Defendants' goods and services.

53. Plaintiffs have and will continue to suffer irreparable harm based on Defendants registration and use of the <acorn.tv> domain in violation of 15 USC 1125 (d).

### COUNT V – FRAUDULENT USE OR IMITATION OF A TRADENAME (Md. Code Bus. Reg. § 1-415 *et seq.*)

54. Paragraphs 1-53 are incorporated herein by reference.

55. Defendants' ACORN TV designation is the same as, or similar to, Plaintiff's ACORN trade name as used in connection with its business in Maryland.

56. Defendants have used and promoted their ACORN TV designation in connection with their business in Maryland, as described above, with the intent to defraud and/or imitate the ACORN trade name.

### COUNT VI – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### (Maryland Common Law)

57. Paragraphs 1-56 are incorporated by reference.

58. Defendants' actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants, their products, and their commercial activities by or with Plaintiff such that Defendants acts constitute infringement of Plaintiff's proprietary rights in its ACORN Marks, misappropriation of Plaintiff's goodwill in those marks, and unfair competition under Maryland common law.

WHEREFORE, Plaintiff demands the Court:

1. Enter judgment against Defendants and in favor of Plaintiff for the violations alleged in this Complaint;

2. Enter injunction against further use by Defendant, its officers, agents, and employees, of Plaintiff's marks, specifically including but not limited to any term that includes "ACORN" or a misspelling in connection with the promotion, marketing, advertising of Defendant's goods or services; and against diluting, blurring or passing off or falsely

designating the origin of the ACORN marks from injuring Plaintiff's goodwill and reputation built in the marks;

3. That Defendant be directed to file with this Court and serve upon Plaintiff within thirty days after service of permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the permanent injunction;

4. Transfer the <acorn.tv> domain name from Defendant to Plaintiff;

5. Enter judgment awarding Plaintiffs their damages caused by Defendant's actions;

6. Enter judgment for the costs and reasonable attorney's fees incurred by Plaintiffs herein;

7. Award such other and further relief as the Court may deem appropriate; and

8. Trial by jury of all issues so triable.

> Respectfully submitted,
> ACORN MEDIA GROUP, INC.
>
> By:   /s/ Maurice U. Cahn
> Maurice U. Cahn, Esq. (Bar No. 4171)
> Frederick N. Samuels, Esq. (Bar No. 14027)
> CAHN & SAMUELS, LLP
> 1100 17TH Street, NW  Suite 401
> Washington, D.C.  20036
> T: (202) 331-8777
> F: (202) 331-3838
> maurice.cahn@cahnsamuels.com

Of Counsel for Plaintiff
James L. Lester
MacCord Mason PLLC
1600 Wachovia Tower
300 N. Greene St.
Greensboro, NC 27401